IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHERI L. THUREEN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMPUTER SCIENCES CORPORATION | : | NO. 15-4292 |
| | : | |

## MEMORANDUM OPINION

Savage, J.                                                                                             November 9, 2016

Sheri Thureen has sued her former employer, Computer Sciences Corporation ("CSC"), claiming it did not award her shares of stock to which she is entitled under a stock award agreement. She asserts causes of action for breach of contract and violation of the Pennsylvania Wage Payment and Collection Law ("WPCL"). Moving to dismiss the complaint, CSC primarily argues that Thureen waived her right to sue for breach of contract in the agreement, and payments under the award do not constitute wages for purposes of the WPCL.

Applying principles of contract interpretation, we find that the agreement's language covering waiver of the right to sue is ambiguous and must be construed against CSC. The ambiguity raises a question regarding the parties' reasonable expectations. We also conclude that Thureen has stated a cause of action for violation of the WPCL. Even if the parties had agreed to the waiver of the right to sue, the waiver is unenforceable as to the WPCL claim. Therefore, we shall deny CSC's motion to dismiss the complaint.

## Background

Thureen was hired by CSC in 1997. During her career there, she was promoted

several times, ultimately achieving the position of "President of UK and Ireland Health Care of CSC" in April, 2011.[1]  In 2014, after being diagnosed with cancer, she took a one-year medical leave of absence.  On February 2, 2015, she requested an extension of her leave, using accrued sick and vacation time.[2]  CSC refused her request.  Instead, it terminated her employment.

In the meantime, on June 2, 2012, CSC had granted Thureen 6,222 restricted stock units ("RSUs") to vest in stages over three years provided specified earning targets were met.[3]  The Award Agreement granting the RSUs contained a multiplier provision.  It provided that if earnings-per-share reached or exceeded $3.36 in the third fiscal year, Thureen would receive 12,444 shares.  In the event of termination for disability, the award would be pro-rated.[4]  Both at the time of Thureen's termination and at the end of fiscal year 2015, CSC's profits exceeded the earnings-per-share threshold.

The parties dispute whether Thureen was entitled to the benefit of the multiplier. She had already received 3,111 vested shares for fiscal years 2013 and 2014.  After her termination, she was awarded an additional 2,937 shares, which represented a pro-rata distribution for the final year.  CSC did not apply the multiplier.  CSC argues that because she was terminated before the end of fiscal year 2015, she was entitled only to a pro-rata distribution and the multiplier did not apply.

Thureen insists she is entitled to a full, rather than a pro-rated, distribution

---

[1] Compl. (Doc. No. 1) ¶ 25.

[2] *Id.* ¶¶ 44–46; Mot. to Dismiss (Doc. No. 10-1) at 3.

[3] Compl., Ex. A (Doc. No. 1-1), App'x C.  The Award Agreement and her official notification letter are attached to the complaint.

[4] *Id.* § 4(b)(i).

because her accrued vacation and sick leave extended her employment through the end of fiscal year 2015.[5]  She contends the multiplier applies because the earnings-per-share goal had been met at the time of her termination.

## Standard of Review

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all well-pleaded allegations in the complaint are accepted as true and viewed in the light most favorable to the plaintiff.  *Powell v. Weiss*, 757 F.3d 338, 341 (3d Cir. 2014).  The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), giving the defendant "fair notice of what the . . . claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Although this standard "does not require 'detailed factual allegations' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

To survive a motion to dismiss, the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The plaintiff must allege facts that indicate "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  Pleading only "facts that are 'merely consistent with' a defendant's liability" is insufficient and cannot survive a motion to dismiss.  *Id.* (citing *Twombly*, 550 U.S. at 557).  With these standards in mind, we shall accept as true the facts as they appear in

---

[5] Compl. ¶¶ 45, 49.

Thureen's complaint and draw all possible inferences from those facts in her favor.

## Analysis

CSC contends Thureen waived her breach of contract claim in the Award Agreement. It relies upon Section 18(k) which provides that "no claim or entitlement to compensation or damages shall arise from forfeiture of the Award resulting from termination of the Employee's employment by the Employer or Company (or an Subsidiary) for any reason whatsoever . . . ."[6] Thureen argues that this provision does not apply because her claim does not arise from forfeiture of her award.

Resolution of the disagreement depends on whether Section 18(k) is interpreted broadly or narrowly. The expansive interpretation, urged by CSC, is that the award recipient gives up any and all claims arising from the loss of the award "resulting from termination . . . for any reason whatsoever." The narrow reading, advanced by Thureen, limits the waiver to claims arising "from forfeiture of the Award." The conflicting interpretations are created by the language of the provision itself. Thus, we must apply rules of contract interpretation.

The primary task in contract interpretation is determining the intent of the parties. *Am. First Fed. Credit Union v. Soro*, 359 P.3d 105, 106 (Nev. 2015).[7] When the contract language is clear and unambiguous, the court construes the contract as a matter of law. *Davis v. Beling*, 278 P.3d 501, 515 (Nev. 2012). On the other hand, where the contract is ambiguous, it is for the fact finder to ascertain the parties' intent. *Anvui, LLC v. G.L. Dragon, LLC*, 163 P.3d 212, 216 (Nev. 2007). In determining the

---

[6] Compl., Ex. A § 18(k).

[7] The Award Agreement states that it shall be construed and enforced in accordance with Nevada law. *Id.* § 19. Thus, we apply Nevada law.

meaning of a provision, effect must be given to all the provisions in the contract. *Bielar v. Washoe Health Sys., Inc.*, 306 P.3d 360, 364 (Nev. 2013); *see also Ringle v. Bruton*, 86 P.3d 1032, 1039 (Nev. 2004) ("In determining the parties' intent, the trier of fact must construe the contract as a whole, considering of the contract's subject matter and objective, the circumstances of its drafting and execution, and the parties' subsequent conduct.").

Merely because the parties interpret the contract differently does not mean it is ambiguous. *Galardi v. Naples Polaris, LLC*, 301 P.3d 364, 366 (Nev. 2013). Only where different constructions are reasonably capable of more than one understanding is a contract ambiguous. *Am. First*, 359 P.3d at 106; *see also Galardi*, 301 P.3d at 366. Where a term is ambiguous, it is construed against the drafter. *Am. First*, 359 P.3d at 106 (quoting *Anvui*, 163 P.3d at 215–16).

Applying these principles, we conclude that Section 18(k) is ambiguous. It is capable of two reasonable interpretations. One is that it bars suit only where the claim is based on the forfeiture of the award. The other precludes all actions, no matter the basis.

The narrow interpretation of Section 18(k) bars a claim against CSC when the employee forfeits the award as provided in the Agreement. When Section 18(k) references forfeiture, the only provision that informs the application of Section 18(k) is Section 6. There is no other provision defining forfeiture.

Section 6, entitled "Recoupment and Forfeiture," provides that "[i]f the Employee breaches any of the covenants of Section 6(b)(i), (ii) or (iii) hereof prior to the Settlement

Date for the RSU, the RSU shall be terminated and forfeited."[8]  Events triggering forfeiture are the disclosure or use of confidential information; solicitation of CSC's employees, clients and prospective clients; and participation in activity in competition with CSC.[9]

CSC does not argue that any of these grounds justifying forfeiture are present. Indeed, CSC acknowledges Thureen's right to an award under the Agreement. It does not assert that she forfeited the award by breaching the Agreement. In fact, CSC made a pro-rata distribution for the period that Thureen was employed in FY2015.

After Thureen had exhausted her medical leave, CSC refused to allow her to use accrued vacation and sick leave. Then, CSC terminated her because she was medically unable to continue working. Her departure was due to her disability.

An employee's termination due to disability calls for a pro-rata distribution, not a forfeiture of the award. Section 4(b)(i) provides "the Company shall settle the unvested portion of the RSUs in full by delivering a pro-rated amount of the Target Units in accordance with Section 2, with such pro-ration based on the Employee's Period of Service during the applicable performance period."

The broad interpretation of Section 18(k) bars any "claim or entitlement to compensation" arising out of termination "for any reason whatsoever." That section contains an internal conflict. Other language in the provision appears to limit the waiver to "forfeiture," which implicates Section 6(a)(ii). As we have learned, that section limits forfeiture to specified conduct.

---

[8] *Id.* § 6(a)(ii).

[9] *Id.* § 6(b).

The conflict would not exist had CSC not used the word "forfeiture" in Section 18(k). Had the provision been drafted differently, ambiguity could have been avoided. For example, if CSC intended to preclude any and all lawsuits, it could have drafted the provision to read: "no claim or entitlement to compensation or damages with respect to the Award resulting from termination . . . for any reason whatsoever." It did not. Instead, it inserted the words "claims arising from forfeiture." Had it not injected forfeiture into the section, there would be no ambiguity.

Given the ambiguity, we cannot construe the provision as a matter of law. It is for the fact finder to determine the parties' intent. Therefore, we shall not dismiss Thureen's breach of contract claim.

*Pennsylvania Wage Payment and Collection Law*

CSC argues that the Pennsylvania Wage Payment and Collection Law does not apply because the shares were not compensation. It relies on the characterization in the Award Agreement that the stock grants were not "compensation of any kind."[10]

The WPCL "provides employees a statutory remedy to recover wages and other benefits that are contractually due to them." *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 953 (Pa. Super. 2011) (quoting *Oberneder v. Link Comput. Corp.*, 696 A.2d 148, 150 (Pa. 1997)), *aff'd*, 106 A.3d 656 (Pa. 2014). "Wages" include equity interests that are offered to an employee for any reason related to employment. *Hartman v. Baker*, 766 A.2d 347, 353 (Pa. Super. 2000) (citing *Bowers v. NETI Techs., Inc.*, 690 F. Supp. 349, 353 (E.D. Pa. 1988)). Thus, benefits, not just wages, are protected by the WPCL.

The award was a benefit intended to ensure continued employment with the

---

[10] *Id.* § 18(g).

company and to reward the employee for her performance contributing to the company's success. The award was calculated based on CSC's performance. Thureen's official award notification explains that the "awards are designed to support our immediate turnaround and long term business objectives, create enhanced incentives and rewards for sustained levels of performance, and more closely align the interests of our management team with those of our shareholders."[11] It was an earned benefit.

Contrary to its current position, CSC did consider the award compensation. As revealed in the email notifying Thureen of the stock award, Lisa Goldey of Human Resources referred to the award as an "important component of [Thureen's] FY2013 total direct compensation package."[12]

Because Thureen's award was a benefit related to her employment, she has stated a claim under the WPCL. Furthermore, even if the waiver in Section 18(k) barred her action on the contract claim, it cannot preclude her claim under the WPCL. Rights under the WPCL cannot "be contravened or set aside by private agreement." 43 Pa. Cons. Stat. § 260.7. Consequently, an employer and an employee may not waive an employee's WPCL rights. *See O'Donnell v. LRP Publ'ns*, 694 F. Supp. 2d 350, 358–59 (E.D. Pa. 2010). Because Thureen's award was a benefit covered by the WPCL and could not be waived, she has stated a cause of action under the WPCL.

*Sufficiency of Complaint*

CSC argues that the complaint is insufficient to state a cause of action because it

---

[11] Compl., Ex. B (Doc. No. 1-2).

[12] *Id.*

does not specifically identify the breached provisions of the Award Agreement. The Agreement itself is attached as an exhibit to the complaint. The allegations read together with the attached agreement state a cause of action for breach of contract and violation of the WPCL.

## Conclusion

Because a fact finder must determine whether the parties intended to preclude all claims arising out of a dispute over entitlement to an award in the event of termination, we cannot dismiss Thureen's contract cause of action as a matter of law. Because the stock award is compensation for the purposes of the WPCL, Thureen has stated a cause of action under the WPCL. Therefore, we shall deny CSC's motion to dismiss.